1
2
3
4
5
6
7
8

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hung Ba Nguyen, | No. CV-25-04748-PHX-SHD (ASB) |
|       Petitioner, | |
| v. | **ORDER** |
| David R. Rivas, et al., | |
|       Respondents. | |

On December 17, 2025, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241 seeking release from immigration detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), a Motion for Preliminary Injunction requesting the same, and a Motion for Limited Discovery. (Docs. 1, 3, 4).[1] By Order dated December 22, 2025, the Court ordered Respondents to answer the Petition and respond to the injunctive motion on an expedited basis, and granted the Motion for Limited Discovery. (Doc. 7). Both the Petition and injunctive motion are now fully briefed. (Docs. 22, 26). For the reasons that follow, the Court will grant the Petition and order that Petitioner be immediately released

---

[1] In the Petition, Petitioner also raised a challenge to the possibility he might be removed to a third country. (Doc. 1 at 11). There is no present indication Respondents are seeking to remove Petitioner to a third country. (*See* Doc. 22-1 ¶ 25) ("ICE is not seeking to remove Petitioner to a third country."). Therefore, Petitioner's claim regarding third country removal is, at this juncture, speculative. For purposes of standing, an injury must be "'concrete and particularized,' as well as 'actual or imminent,'" and cannot be 'conjectural or hypothetical.'" *Carney v. Adams*, 592 U.S. 53, 58 (2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). It is not at all clear Petitioner will be subject to third country removal. Accordingly, Ground Two will be dismissed without prejudice.

1    from custody.

2    **I.    Background**

3        Petitioner is a native of Vietnam who entered the United States as a lawful

4    permanent resident in 1975 when he was six years old.  (Doc. 22-1 ¶ 5-6).  After several

5    criminal convictions, Petitioner was taken into ICE custody on September 10, 2009 and

6    removal proceedings were initiated against him.  (*Id.* ¶ 12).  On October 26, 2009, an

7    immigration judge (IJ) ordered Petitioner removed to Vietnam. (*Id.* ¶ 13).  On January 22,

8    2010, Petitioner was released from custody on an order of supervision (OSUP) "because

9    [ICE] was unable to remove him to Vietnam."  (*Id.* ¶ 14).  After additional criminal

10   convictions, Petitioner was again taken into ICE custody on two occasions in 2018; each

11   time he was released on an OSUP.  (*Id.* ¶¶ 18, 20).  Petitioner was most recently taken into

12   ICE custody on August 14, 2025.  (*Id.* ¶ 24).  On October 21, 2025, "ICE sent a travel

13   document request to ERO Removal and International (RIO) headquarters for review."  (*Id.*

14   ¶ 27).  Despite two subsequent requests to ERO RIO "for an update," ERO RIO has not

15   responded.  (*Id.* ¶¶ 28-29).

16       As of the date of this Order, Petitioner remains detained by ICE.

17   **II.   Legal Standard**

18       Petitioner's continued detention is governed by 8 U.S.C. § 1231 and *Zadvydas v.*

19   *Davis*, 533 U.S. 678 (2001).  Under § 1231(a)(1), the Government has 90 days in which to

20   remove an alien once a removal order becomes final.  Detention during this removal period

21   is mandatory. 8 U.S.C. § 1231(a)(2).  If the Government is unable to effect removal within

22   the 90-day removal period, however, continued detention of aliens such as Petitioner

23   becomes discretionary.  8 U.S.C. § 1231(a)(6).  That discretion, however, is not unfettered,

24   and indefinite detention is not permitted.  *Zadvydas*, 533 U.S. at 689 (8 U.S.C. § 1231(a)(6)

25   "does not permit indefinite detention.").  This is not to say that every alien like Petitioner

26   must be released once the 90-day removal period has expired.  533 U.S. at 701.  Rather,

27   the Supreme Court in *Zadvydas* recognized an implicit post-§ 1231(a)(2) period in which

28   continued detention is "presumptively reasonable" and does not violate the Fifth

Amendment.  *Id.*  The *Zadvydas* Court concluded that this "presumptively reasonable" period extends for no more than 6-months once an order of removal becomes final (including the 90-day mandatory detention period under § 1231(a)(2)).  *Id.*  Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  If, after considering the evidence, the Court finds that "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  *Id.* at 699.[2]

### III.  Discussion

Petitioner's removal order became final no more than 30 days after the IJ's October 28, 2004 Order, when he apparently failed to appeal that order to the BIA.  The § 1231(a) period thus began to run on approximately November 26, 2009, and expired 90 days later on approximately February 26, 2010.  At the latest, the post-§ 1231(a) *Zadvydas* period began to run when Petitioner was detained by ICE on August 14, 2025, and expired no more than 90 days later on approximately November 14, 2025.  Accordingly, as of the date

---

[2] Although Respondents cite to *Demore v. Kim*, U.S. 510, 527-28 (2003), for the proposition that to satisfy *Zadvydas* removal must be "no longer practically attainable," this stretches *Demore* beyond credulity.  As an initial matter, *Demore* did not address detention under § 1231(a)(6), but instead dealt with detention under a separate statute—8 U.S.C. § 1226(c)—not applicable here.  Further, while *Demore* discussed *Zadvydas*, it explicitly made clear that "*Zadvydas* is materially different from the present case" for multiple reasons.  *Id.* at 527.  Further, reliance on truncated dicta from *Demore* ignores the Supreme Court's subsequent holding in *Clark v. Martinez*, 543 U.S. 371, 384 (2005), which both dealt with, as here, detention under § 1231(a)(6), and explicitly

> reject[ed] the Government's argument that, under *Zadvydas*, § 1231(a)(6) authorizes detention until it approaches constitutional limits.  The Government provides no citation to support that description of the case—and none exists.  *Zadvydas* did not hold that that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal. . . . In *Zadvydas*, it was the statute's text read in light of its purpose, not some implicit statutory command to avoid approaching constitutional limits, which produced the rule that the Secretary may detain aliens only for the period reasonably necessary to bring about their removal.

(cleaned up).

of this Order, Petitioner has been detained beyond the "presumptively reasonable" period articulated in *Zadvydas*. As such, to obtain relief Petitioner must first provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and, if he does so, Respondents "must respond with evidence sufficient to rebut that showing." *Id.*

Petitioner argues that there is no reason to expect that Respondents will be able to effectuate his removal given that the government has unsuccessfully attempted to do so on multiple prior occasions over the past 15+ years. The Court is inclined to agree. Respondents have taken Petitioner into custody on at least three previous occasions, but each time released Petitioner on an OSUP after they determined that was "was unable to remove [Petitioner] to Vietnam. (Doc. 22-1 ¶¶ 14, 18, 20). No evidence has been provided to support that this dynamic has changed. Indeed, it does not even appear that ICE has requested travel documents from Vietnam in order to effect Petitioner's removal. (*See id.* ¶ 27) (noting that on October 21, 2025, "ICE sent a travel document request to ERO Removal and International (RIO) headquarters for review," but providing no indication that request was subsequently sent to the government of Vietnam). While Respondents indicate that "ICE has removed Vietnamese citizens to Vietnam as recently as December 2025," this is irrelevant to whether it is reasonably foreseeable that it will be able to remove *Petitioner* to Vietnam (as distinct from "Vietnamese citizens" more generally).

On this record, the Court finds both that Petitioner has shown "good reason" to believe that his removal to Vietnam is not significantly likely to occur in the reasonably foreseeable future, and that Respondents have failed to rebut that showing with sufficient evidence. Respondents have had more than 15 years to effect Petitioner's removal but have been unable to do so despite repeated attempts, and no evidence has been provided to support that removal is significantly likely to occur in the reasonably foreseeable future. Accordingly, the Court finds that Petitioner's continued detention is in violation of the Fifth Amendment, and it will thus grant Count One of the Petition.

. . . .

**IT IS THEREFORE ORDERED** that:

(1)    Count One of the Petition for Habeas Corpus (Doc. 1) is **granted**.  Count Two of the Petition is **denied without prejudice**.

(2)    Respondents must **IMMEDIATELY RELEASE** Petitioner from custody under the same conditions that existed prior to his re-detention.

(3)    Within **48 HOURS** of the date of this Order, Respondents must file a Notice of Compliance.

(4)    The Clerk of Court must enter judgment accordingly, and close this case.

Dated this 5th day of March, 2026.

Honorable Sharad H. Desai
United States District Judge